UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DUANE P. HAYNES                                    CIVIL ACTION

VERSUS                                             NO. 14-1425

MOMENTIVE SPECIALTY                                SECTION "B"(3)
CHEMICALS INC.

<u>ORDER AND REASONS</u>

**I.   NATURE OF MOTIONS AND RELIEF SOUGHT**

Before the Court is Plaintiff's, Duane P. Haynes, Motion for Partial Summary Judgment (Rec. Doc. 39), as well as Defendant's, Hexion Inc. f/k/a Momentive Specialty Chemicals Inc. ("MSC"), Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment and Prayer for Summary Judgment in Favor of Nonmovant per FRCP 56(f)(1) (Rec. Doc. 49).

Plaintiff moves the Court pursuant to Fed. R. Civ. P. 56 for summary judgment on the following issues:

(1)  That Defendant MSC is negligent *per se*, for violation of Occupational Health and Safety Administrations ("OSHA") regulations, as set forth in Respiratory Protection, 29 C.F.R. § 1910.134(i)(8) ("the OSHA Regulation").
(2)  That the violation of the OSHA Regulation is evidence of Defendant MSC's negligence so that MSC should be found negligent.
(3)  That Defendant MSC is negligent under La. Civ. Code arts. 2317 and 2317.1.

Defendant moves this Court pursuant to Fed. R. Civ. P. 56(f)(1) for summary judgment on the following issues:

(1)  That Plaintiff cannot establish any breach on the part of MSC was a legal cause of Plaintiff's damages.
(2)  That MSC is not Plaintiff's employer in fact.
(3)  That MSC may not be considered Plaintiff's employer under the multi-employer worksite doctrine.

1

## II.  FACTS AND PROCEDURAL HISTORY

The undisputed material facts are as follows. MSC was the owner and operator of the dock located at its facility in Geismar, Louisiana, including the nitrogen gas lines, on December 20, 2013. (Rec. Doc. 39-2 at 1). Part of MSC's business at its facility in Geismar includes formaldehyde production and its dock at that site handles the loading and unloading of barges for the transfer of chemicals. (Rec. Doc. 39-2 at 1).

Plaintiff was employed by Delta Coatings, Inc. ("Delta") as a sandblaster and painter on December 20, 2013. (Rec. Doc. 39-2 at 1). MSC hired Delta to sandblast and paint certain steel structures of MSC's dock at Geismar in the Fall of 2013, including the catwalk from the guard shack to the river and the dolphins (platforms). (Rec. Doc. 39-2 at 1). The nitrogen lines on MSC's dock at Geismar, including the nitrogen line located between the two Gorbel freestanding Jib Cranes at the MSC dock at Geismar, were not included in those structures or parts of the MSC dock at Geismar to be worked on by Delta on December 20, 2013. (Rec. Doc. 39-2 at 2).

There were two Delta crews present at the MSC Dock at Geismar – under the supervision of Delta's superintendent responsible for work at the MSC Dock, Simon Collor, and Delta foreman, Marc

Malone.[1] (Rec. Doc. 39-2 at 2). Plaintiff was part of Mr. Malone's Delta crew who appeared on the MSC dock at Geismar to begin sandblasting work on the morning of December 20, 2013. (Rec. Doc. 39-2 at 2). On that morning, Plaintiff went to the bottom level of the platform that he was supposed to sandblast and positioned himself so that he could be seen by the blasters above his level so as not to be blasted by them. (Rec. Doc. 39-2 at 2). Once in place, Haynes placed his blast hood on, snapped the cape of his blast hood under his arm and passed out and fell after inhaling nitrogen. (Rec. Doc. 39-2 at 2).

After a second Delta crew member collapsed the same day, it was discovered that the hose from the Delta purifier had been inadvertently connected to a nitrogen line. (Rec. Doc. 39-2 at 3). The nitrogen line was not tagged, labeled, or color coded for identification at the time of the subject accident, nor was it disabled or locked out prior to the start of work by Delta that day. (Rec. Doc. 39-2 at 3). The connection fitting on the end of the nitrogen line on MSC's Dock was a Chicago coupling connection that belonged to MSC. (Rec. Doc. 39-2 at 3).

Suit was originally filed in this Court on June 18, 2014, naming MSC as the only Defendant and establishing jurisdiction pursuant to 28 U.S.C. § 1331 and the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). (Rec. Doc. 1 at 1). On March

---

[1] The parties dispute whether Mr. Collor oversaw both crews or whether Mr. Collor and Mr. Malone each oversaw one crew. (Rec. Doc. 49-1 at 1).

12, 2015, the Louisiana Workers' Compensation Corporation filed its intervention complaint for indemnification. (Rec. Doc. 10). On July 27, 2015, Plaintiff amended his petition to establish jurisdiction pursuant to 28 U.S.C. § 1331, stating that Plaintiff is a citizen of Louisiana, Defendant is a citizen of New Jersey and Ohio, and the amount of controversy exceeds the jurisdictional limits. (Rec. Doc. 32 at 1-2). Plaintiff also filed a motion to dismiss his claims pursuant to the Longshore and Harbor Workers' Compensation Act, which was granted by this Court on August 25, 2015. (Rec. Doc. 41). Plaintiff now brings the instant Motion for Summary Judgment to this Court, which Defendant has responded to with an opposition and its own Motion for Summary Judgment. Considering both of these motions,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED**, as set forth fully below.

### III. CONTENTIONS OF MOVANT

Plaintiff moves for summary judgment on the grounds that there is no genuine issue of material fact as to whether MSC violated the OSHA Regulation. Plaintiff frames his motion on the idea that Defendant is governed by the OSHA Regulation pursuant to the multi-employer worksite doctrine. As such, Plaintiff argues that MSC is negligent *per se* for violating the regulation or, otherwise, that the violation is evidence of negligence.

4

Alternatively, Plaintiff argues that MSC is negligent pursuant to La. Civ. Code arts. 2317 and 2317.1.

## IV.  CONTENTIONS OF OPPONENTS

Defendant contends that the OSHA Regulation is inapplicable because MSC is not an employer in fact of Plaintiff and the Fifth Circuit rejects the multi-employer worksite doctrine or, alternatively, because MSC is not considered an "employer" under that doctrine. Defendant further asserts that MSC did not actually violate the OSHA Regulation. Finally, Defendant argues that there is a genuine issue of material fact as to whether MSC is negligent under Louisiana law.

Defendant moves for summary judgment finding that MSC is not Plaintiff's employer in fact, that MSC is not Plaintiff's employer under the multi-employer worksite doctrine, and that Plaintiff cannot establish that any breach on the part of MSC was a legal cause of his damages.

## V.  MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

(1986).  Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998).

The moving party bears the initial responsibility of informing the district court of the basis for its motion. *Celotex*, 477 U.S. at 323. The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56). If and when the movant carries this burden, the nonmovant must then go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. . . . Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616 (5th Cir. 1994). Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.

*Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

**VI.   DISCUSSION**

Plaintiff's negligence claims are based on two theories – violation of the OSHA Regulation and Louisiana law. This Court will address each in part. Defendant's requested relief will be considered therein.

**A. The OSHA Regulation**

Plaintiff contends that Defendant MSC is negligent *per se* or, alternatively, negligent for violating the OSHA Regulation. The OSHA Regulation at issue states that "[t]he employer shall ensure that breathing air couplings are incompatible with outlets for nonrespirable worksite air or other gas systems. No asphyxiating substance shall be introduced into breathing air lines." 29 C.F.R. § 1910.134(i)(8). In determining whether it is proper to grant Plaintiff's Motion for Partial Summary Judgment, it must be clear that there is no genuine issue of material fact as to the applicability of the OSHA Regulation to Defendant MSC and as to Defendant MSC's violation of the same. As will be addressed, this Court is barred by precedent from finding that the OSHA Regulation applies to Defendant MSC for purposes of negligence *per se*, but there is uncertainty as to its applicability to Defendant MSC for use as evidence of negligence. Nonetheless, this Court finds that Defendant MSC did not actually violate the OSHA Regulation.

### 1. The Applicability of the OSHA Regulation

The crux of the OSHA Regulation's applicability rests on its governance of "employers." Because Plaintiff was employed by Delta, and MSC hired Delta to complete its project (Rec. Doc. 39-2 at 1), MSC does not appear to be an employer of Plaintiff so as to be liable under its terms. Consequently, the parties dispute whether Defendant MSC might be found an employer under the OSHA Multi-Employer Citation Policy ("OMCP").

#### a. Defendant is Not an Employer in Fact

As stated above, Defendant MSC does not appear to be an employer in fact of Plaintiff. Plaintiff seems to assume this to be the case, as Plaintiff's motion focuses on the OMCP and Plaintiff's Amended Complaint does not assert that Defendant is an employer. As such, this Court holds that there exists no genuine issue of material fact so as to hold that Defendant MSC is the employer of Plaintiff. *See* Fed. R. 56(e)(2). Consequently, **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**, in regard to holding that MSC is not Plaintiff's employer in fact.

#### b. Defendant is Not an Employer under the OSHA Multi-Employer Citation Policy for a Finding of Negligence *Per Se*

Plaintiff and Defendant primarily dispute whether Defendant MSC might be found an employer under the OMCP, so as to fall within the purview of the OSHA Regulation.[2] Specifically, Plaintiff

---

[2] Plaintiff summarizes the OMCP in relevant part:
> If the employer falls into one of these categories, it
> has obligations with respect to OSHA requirements and

references the OMCP and, relying solely on the opinion of expert Robert Borison, concludes that Defendant MSC is a creating, controlling, and/or correcting employer because "the nitrogen line on [MSC's] dock facility – which it created, controlled and/or had the responsibility to correct – failed to have a unique connector at the end in order to prevent the inadvertent connection of the airline hose to a non-respirable gas line[.]" (Rec. Doc. 39-1 at 5). Plaintiff then mentions the seminal case in the Fifth Circuit, which stresses the Court's hesitation to apply the OMCP,[3] but points to the reissuance of the OMCP after the Court's decision. (Rec. Doc. 39-1 at 6).

Defendant argues that MSC is not an employer under the OMCP because the Fifth Circuit has rejected the application of that Policy. (Rec. Doc. 49 at 10-11). In the alternative, Defendant argues that MSC would not be found an employer under the OMCP even in Circuits which have adopted its doctrine. (Rec. Doc. 49 at 11-

---

may be cited for a violation. The three categories of employers are:
(1) CREATING EMPLOYER – The employer who actually creates/causes the hazard.
(2) CONTROLLING EMPLOYER – The employer who is responsible, by contract or through actual practice, for safety and health conditions on the worksite/equipment.
(3) CORRECTING EMPLOYER – The employer who has the responsibility for actually correcting the hazard. This usually occurs where an employer is given the responsibility of installing and/or maintaining particular safety/health equipment or devices.
(Rec. Doc. 39-1 at 4-6). *See also* Dep't of Labor, OSHA Field Op. Man. Sec I, Ch. 12 (December 10, 1999), *available at* https://www.osha.gov/pls/oshaweb/ owadisp.show_document?p_table=DIRECTIVES&p_id=2024.

[3] *See Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 707 (5th Cir. Unit A Oct. 1981) ("[I]n this negligence action, we reject the argument that the failure of a third party that was not the plaintiff's employer to follow OSHA regulations establishes that third party's negligence.").

12). In order to fully address the contentions of both Plaintiff and Defendant, a brief review of the multi-employer worksite doctrine is required.

### i. The Fifth Circuit's Interpretation of The Multi-Employer Worksite Doctrine

The multi-employer worksite doctrine dates back to the 1970s, as does the imposition of liability pursuant to that theory. *Universal Const. Co. v. Occupational Safety & Health Review Comm'n*, 182 F.3d 726, 728 (10th Cir. 1999). "The multi-employer doctrine provides that an employer who controls or creates a worksite safety hazard may be liable under [OSHA] even if the employees threatened by the hazard are solely employees of another employer." *Id.* "The doctrine has its genesis in the construction industry where numerous employers, often subcontractors, work in the same general area, and where hazards created by one employer often pose dangers to employees of other employers." *Id.* Although the OMCP has been amended since the 1970s, most recently in 1999, the doctrine itself has been rejected by the Fifth Circuit since its inception. *Id.* (stating that the doctrine "has been accepted in one form or another in at least five circuits, and rejected outright in only one" – the Fifth Circuit).[4]

---

[4] In making this conclusion about the Fifth Circuit, the Tenth Circuit cited a case decided in 1975, in which the Court stated:  "We are in agreement . . . with . . . the general rule that a contractor is not responsible for the acts of his subcontractors or their employees[.]" *Se. Contractors, Inc. v. Dunlop*, 512 F.2d 675, 675 (5th Cir. 1975). *See also IBP, Inc. v. Herman*, 144 F.3d 861, 866 n.3 (D.C. Cir. 1998) ("Only the Fifth Circuit has squarely rejected multi-employer liability[.]").

As acknowledged by Plaintiff, the *Melerine* decision is indicative of the Fifth Circuit's rejection of the multi-employer worksite doctrine, despite being decided prior to the revision of the OMCP. In that case, the Court stated:

> In a negligence action, regulations promulgated under [OSHA], provide evidence of the standard of care exacted of employers, but they neither create an implied cause of action nor establish negligence per se. While they are evidence of a general standard of care due employees, they establish no standard of care due third persons. Therefore, in this negligence action, we reject the argument that the failure of a third party that was not the plaintiff's employer to follow OSHA regulations establishes that third party's negligence.

*Melerine*, 659 F.2d at 707. As pointed out by Defendant, this standard has been reemphasized by the Fifth Circuit, though perhaps more narrowly, earlier this year. *See Martino v. Kiewit New Mexico Corp.*, 600 F. App'x 908 (5th Cir. 2015).

In *Martino*, the court denied a motion for summary judgment on the issue of negligence *per se* on the grounds that OSHA regulations "protect only an employer's own employees." *Id.* at 912 (quoting *Melerine*, 659 F.2d at 710–11). The Court stated, "We have not endorsed a non-employee's use of OSHA regulations to sue a general contractor in negligence per se." *Id.* (citations omitted). Hence, it is clear that the Fifth Circuit's view of the multi-employer worksite doctrine has not largely changed, and this Court does not intend to reverse that trend.

However, the *Martino* decision, and in fact the *Melerine* decision, primarily focus on the issue of negligence *per se*. Therefore, while the Fifth Circuit is clear that it rejects the application of the multi-employer worksite doctrine in finding employers not in fact negligent *per se*, it does not unequivocally dismiss the doctrine in its entirety. As a result, this Court concludes that Plaintiff cannot prevail on his motion as it pertains to issues of negligence *per se*, but declines to expand those limited holdings of the Fifth Circuit to determine whether the violation of an OSHA Regulation by a non-employer may be used as evidence of negligence.

Therefore, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment for finding Defendant negligent *per se* is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED**, insomuch as MSC is not Plaintiff's employer under the multi-employer worksite doctrine for the purposes of finding MSC negligent *per se*.

### ii. Liability of "Employers" Under The Multi-Employer Worksite Doctrine

Irrespective of the Fifth Circuit's rejection of the multi-employer worksite doctrine in the negligence *per se* context, it is impossible to conclusively hold that the OMCP can be applied to MSC under these facts to find evidence of negligence.[5] Specifically, as mentioned by Defendant, there is an issue of fact as to whether the multi-employer worksite doctrine applies to MSC.

---

[5] Because this Court has already denied Plaintiff's Motion for Summary Judgment for finding Defendant negligent *per se*, *supra*, that issue need not be readdressed.

As previously mentioned, the multi-employer worksite doctrine "has its genesis in the construction industry where numerous employers, often subcontractors, work in the same general area, and where hazards created by one employer often pose dangers to employees of other employers." *Universal Const. Co.*, 182 F.3d at 728. The doctrine's history highlights its purpose – to provide recourse in those situations where multiple employers and their respective employees were working alongside one another, often in unsafe construction areas. Nevertheless, the courts have diverging views on how broadly the multi-employer worksite doctrine may be applied.

For instance, in the Eleventh Circuit, the Court held that the multi-employer worksite doctrine could not impose liability on a property owner, who did not function as a general contractor. *Calloway v. PPG Indus., Inc.*, 155 F. App'x 450, 455 (11th Cir. 2005). More recently, however, the Occupational Safety Health Review Commission hinted at the doctrine being considerably broader, holding that an OSHA Regulation could impose liability on a defendant that was not plaintiff's employer, so long as the defendant was "an 'employer' as that term is defined under § 3(5) of [OSHA]." *Summit Contractors, Inc.*, 23 BNA OSHC 1196 (No. 05-0839, 2010), *denying petition for review sub nom. Summit Contractors, Inc. v. Sec'y of Labor*, 442 F. App'x 570 (D.C. Cir.

2011).[6] However, in *Summit*, defendant was a general contractor, and not a property owner. *Id.*

As inferred above, *Calloway* and *Summit* could be reconciled, so as to conclude that the OMCP applies only to general contractors and subcontractors, working within the same space. Nonetheless, the OMCP itself provides an example of a more passive "Employer Host" who operates a factory, hires a company to service machinery, and is found liable as a "creating employer" under OSHA, for failure to cover drums of a chemical. *See* Dep't of Labor, OSHA Field Op. Man. Sec I, Ch. 12. Hence, this Court recognizes that determining the applicability of the OMCP is a fact-intensive inquiry, to be decided only when all of the relevant facts and circumstances have been considered.

Here, Plaintiff provides no factual evidence that would encourage this Court to hold that Defendant is in such a position to be held an employer under the multi-employer worksite doctrine – e.g., as a general contractor. Rather, Plaintiff states that MSC is a manufacturing company that hired Plaintiff's employer, that Plaintiff worked at MSC's facility at Geismar where MSC owns multiple formaldehyde manufacturing plants, and that Plaintiff was injured while on one of MSC's docks which was equipped with nitrogen gas lines. (Rec. Doc. 39-1 at 2). From there, Plaintiff proceeds to the conclusion that MSC is a creating, correcting,

---

[6] Under OSHA, "[t]he term 'employer' means a person engaged in a business affecting commerce who has employees, but does not include the United States (not including the United States Postal Service) or any State or political subdivision of a State." 29 U.S.C.A. § 652(5).

and/or controlling employer under the OMCP, in reliance on his expert,[7] without ever addressing the preliminary issue of Defendant MSC's position as an employer or, alternatively, as a passive property owner. Thus, Plaintiff has failed to prove by a preponderance of the evidence that Defendant falls within the scope of the OMCP and, consequently, has failed to prove that the relevant OSHA Regulation is undeniably applicable, so as to serve as evidence of negligence.

Similarly, Defendant has not put forth sufficient evidence to demonstrate that MSC is not an "employer" as contemplated by the OMCP. Defendant asserts that MSC "was merely a property owner contracting with Plaintiff's employer for repairs at [MSC's] dock[,]" but fails to provide any evidentiary support for such an assertion. (Rec. Doc. 49 at 12).[8] The only evidentiary support offered by Defendant is the deposition testimony of Plaintiff, which it uses to establish that Delta employees were not working directly alongside MSC employees. (Rec. Doc. 49-4 at 10). While this evidence could be of use in a later determination that the OMCP does not apply to MSC, it is insufficient for the purposes of summary judgment. Further, as will be discussed below, the Court need not decide whether the OMCP applies because the OSHA Regulation is not applicable to Defendant MSC at all, as it was not violated.

---

[7] Rec. Doc. 39-1 at 4-5.
[8] To the contrary, Plaintiff's Motion indicates that Defendant MSC was not merely an owner, but likely an employer of many individuals at its manufacturing plant. (Rec. Doc. 39-1 at 2).

### 2. Requisites for Violating the OSHA Regulation

Although this Court concluded, *supra*, that there is a genuine issue of material fact as to whether the OSHA Regulation is applicable for finding negligence, it should be noted that, up until this point, it has been presumed that Defendant MSC violated the OSHA Regulation for the sake of assessing its applicability. This Court now turns to assess whether there was a violation of the OSHA Regulation, presuming its applicability. As discussed below, MSC did not violate the OSHA Regulation, so as to preclude it from being used as evidence of negligence.

### a. The Coupling and the Outlet were Not Proven to be Compatible

Under the terms of the OSHA Regulation, "[t]he employer shall ensure that breathing air couplings are incompatible with outlets for nonrespirable worksite air or other gas systems." 29 C.F.R. § 1910.134(i)(8). As such, a needed element in violating the OSHA Regulation is a breathing air coupling that is compatible with nonrespirable worksite air. Due to Plaintiff's "failure to properly support an assertion of fact," this Court holds that Defendant is entitled to summary judgment. Fed. R. Civ. P. 56(e).

Plaintiff asserts that he "was injured because the nitrogen coupling was compatible [sic] did not have a unique coupling and thus the plaintiff was able to connect to the nitrogen line (instead of an airline) and was injured." (Rec. Doc. 39-1 at 4). In support, he cites the affidavit of his expert, Mr. Borison, who

states that both the airline and nitrogen couplings were "crow's feet fittings (Chicago couplings)." (Rec. Doc. 39-7 at 5). To strengthen this opinion, Mr. Borison states that he "made an inspection of the [MSC] dock facility in Geismar, Louisiana on February 9, 2015, including the nitrogen lines on the dock, and took photographs[.]" (Rec. Doc. 39-7 at 3). Mr. Borison does not, however, indicate how he came to know what airline couplings were used by Delta on December 20, 2013, nor does this Court find any support for that assertion in Mr. Borison's full report. While Mr. Borison references relevant deposition testimony to indicate that MSC's nitrogen lines had Chicago couplings,[9] no such evidence is provided for the claim that Delta's airlines were also fitted with Chicago couplings.

Contrarily, Defendant argues that Delta's airline was fitted with a "quick connect coupling." (Rec. Doc. 49 at 8). This belief is supported by Defendant's expert, Eric Meyers, who espouses his theory that Delta's airline was fitted with an incompatible quick connect coupling and was never connected to MSC's nitrogen line. (Rec. Doc. 49-2 at 1). Mr. Meyers states that his inspection on December 21, 2013 led him to conclude that "the breathing air line coming from [Plaintiff's] sandblasting hood was attached to the output side of the Delta Coatings air purifier, and the input side of the Delta Coatings air purifier was connected through another

---

[9] Defendant MSC does not dispute that its nitrogen lines were fitted with Chicago couplings.

line to the nitrogen line." (Rec. Doc. 49-2 at 2). This theory is supported by witness testimony at the time of the investigation and later deposition testimony.

Plaintiff has not put forth sufficient evidence to support the assertion that Delta's airline was fitted with a Chicago coupling. Hence, it is impossible to conclude that the breathing air couplings were compatible with outlets for nonrespirable worksite air. For that reason, there is no proof that Defendant MSC violated the OSHA Regulation, presuming its applicability, so as to entitle Plaintiff to judgment as a matter of law.

> **b. The OSHA Regulation Does Not Govern Defendant's Relevant Conduct**

Finally, the language of the OSHA Regulation itself precludes a finding that Defendant violated it. It states, in relevant part, that "[t]he employer shall *ensure that breathing air couplings are incompatible*[.]" 29 C.F.R. § 1910.134(i)(8) (emphasis added). Because the breathing airlines belonged to Delta, it is incumbent upon Delta, and not Defendant MSC, to verify the incompatibility of its air couplings under the OSHA Regulation.

As such, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment as it pertains to finding Defendant negligent for violating the OSHA Regulation is **DENIED**, and Summary Judgment is **GRANTED** on behalf of the Defendant, inasmuch as Defendant has not

violated the OSHA Regulation so that it cannot be used as evidence of negligence.[10]

### B. Negligence Under Louisiana Law

At the outset, this Court recognizes that there is some dispute within the Fifth Circuit as to the appropriateness of summary judgment for determining negligence. Historically, the Court held "that summary judgment is often inappropriate in negligence cases[.]" *Williams v. Williams*, 996 F.2d 306 (5th Cir. 1993) (citations omitted). However, more recently, the Court has criticized this blanket approach, stating, "[W]e have never reversed a district court's entry of summary judgment solely because it involved a particular class of allegations . . . we reject any suggestion that the appropriateness of summary judgment can be determined by such case classification." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.14 (5th Cir. 1994).

Consistent with what seems to be the Fifth Circuit's current view, this Court remains mindful of the rationale used in earlier cases when approaching negligence at the summary judgment stage in the presence of many issues for the trier of fact. *See Gross v. S. Ry. Co.*, 414 F.2d 292, 296-97 (5th Cir. 1969) (citing *Gauck v. Meleski*, 346 F.2d 433, 437 (5th Cir. 1965)) ("Because of the

---

[10] It should be noted that Defendant sought summary judgment on the grounds that MSC cannot be considered Plaintiff's employer under the multi-employer worksite doctrine. Although this Court granted that motion in regard to negligence *per se* claims, it declined to answer whether that doctrine applied for the purpose of negligence claims. Accordingly, while this Court did not technically grant Defendant's motion as requested, the result is the same in that the Court finds the OSHA Regulation inapplicable.

peculiarly elusive nature of the term 'negligence' and the necessity that the trier of facts pass upon the reasonableness of the conduct in all the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where the historical facts are concededly undisputed."). As will be discussed, the facts presented by the parties present a myriad of issues for this Court to consider, but ultimately weigh in favor of summary judgment for Defendant.

In assessing negligence, Louisiana has adopted the "duty-risk analysis" for determining whether there is liability under the specific facts of a case.

> Under this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

*Christy v. McCalla*, 2011-0366 (La. 12/6/11), 79 So. 3d 293, 299. Here, the Court is unable to hold that Plaintiff has proven three of these elements, accepting that cause-in-fact and actual damages have been shown (and are not contested by Defendant).

### 1. Defendant Does Not Have a Duty Distinct from that of an Owner or Operator

First, it has not been proven that Defendant had a duty to conform its conduct to a specific standard of care other than what the law applies to owners and operators of facilities. "Generally, the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on the premises and the duty of not exposing such persons to unreasonable risks of injury or harm." *Offord v. L & W Supply Corp.*, 358 F. App'x 540, 543 (5th Cir. 2009) (citing *Manning v. Dillard Dep't Stores*, *Inc.*, 99-1179 (La. 12/10/99), 753 So. 2d 163, 165). Because it has not been shown that MSC is Plaintiff's employer, it is not established that MSC's duty was more expansive than this.

### 2. Defendant Did Not Breach its Duty

Second, it has not been shown that Defendant failed to conform its conduct to the appropriate standard of care – that is, to exercise reasonable care for the safety of persons on the premises and not expose those persons to unreasonable risks of injury or harm. *See id.* The parties provide factual information that does not lead this Court to conclude that MSC exposed persons to unreasonable risks of injury or harm. Plaintiff asserts, in reliance on his expert, that Defendant's nitrogen line presented an unreasonable risk of injury or harm because it was not color coded or tagged, the nitrogen system was not turned off, there was no hot work permit, and Plaintiff's safety consultant was not

included in its pre-bid inspection and meeting. (Rec. Doc. 39-1 at 9). Mr. Borison bases his opinions concerning the tagging of the lines primarily on depositions, which suggest that lines are typically color coded and tagged, and an OSHA Safety Bulletin, which merely recommends this be done. (Rec. Doc. 39-7 at 16-17, 30-31). Mr. Borison's other opinions have little support, as they rely on deposition testimony that is inconclusive and fails to indicate any standard that Defendant MSC failed to adhere to. (Rec. Doc. 39-7 at 13, 18-19, 20).

Defendant further weakens Plaintiff's argument, by maintaining that there are no OSHA regulations requiring nitrogen lines to be color coded or turned off, in accordance with the opinions of its expert. (Rec. Doc. 49 at 17; Rec. Doc. 49-2 at 3). Additionally, Defendant points out that a hot work permit was not required under the circumstances of the job on that day, nor is it industry custom for a safety professional employed by a contractor such as Delta to visit the worksite. (Rec. Doc. 49 at 17-18). Finally, Plaintiff's significant emphasis on the presence of the nitrogen line, combined with the failure to provide allegations to the contrary, highlights that it was not Defendant MSC, but rather Plaintiff or another Delta employee that incorrectly connected the airline to the nitrogen line. This fact is indicative that Defendant did not expose Delta's employees to an unreasonable risk of injury or harm and that all fault should be attributed to Delta.

Plaintiff also fails to provide factual information that
could lead this Court to conclude that MSC failed to exercise
reasonable care for the safety of the persons on the premises.
Plaintiff asserts that his injury was the result of Defendant's
failure to discover during daily inspections and in issuing a safe
work permit that the couplings on the airlines and nitrogen line
presented a hazard, to provide sufficient warnings on the Safe
Work Permit issued to Plaintiff's employer, and to use an
alternative Safe Work Permit form. (Rec. Doc. 39-1 at 9).
Defendant does not address these assertions, but rather points out
that Delta's supervisor was warned of the nitrogen lines prior to
work ever beginning, and this is supported by his deposition
testimony. (Rec. Doc. 49 at 19; Rec. Doc. 49-3 at 5). As such,
this Court finds that Defendant MSC did exercise reasonable care
for the safety of persons on the premises and did not expose those
persons to unreasonable risks of injury or harm.

### 3. Defendant's Breach was Not a Legal Cause of Plaintiff's Injury

Third, Plaintiff fails to show that Defendant's "breach" was
a legal cause of Plaintiff's injury or, put otherwise, that
Plaintiff's injury is within the scope of MSC's duty. "[L]egal
cause can be evaluated on the basis of foreseeability and ease of
association." *Perkins v. Entergy Corp.*, 98-2081 (La. App. 1 Cir.
12/28/99), 756 So. 2d 388, 410. "In some instances a risk may not
be found within the scope of a duty where the circumstances of

that particular injury to that plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty." *Id.* (citing *Hill v. Lundin & Associates, Inc.*, 256 So.2d 620 (La. 1972)).

Defendant argues that there are many reasons Plaintiff and his specific injury are not foreseeable – most notably, Defendant asserts that MSC's "duty does not encompass the risk that (a) Delta would fail in its contractual duties to provide Plaintiff with everything he needs to perform the work . . . [and] (b) Plaintiff's supervisor would fail to inform Plaintiff of the presence of the Nitrogen line despite [MSC's] disclosure to Delta's Superintendent on the worksite[.]" (Rec. Doc. 49 at 21).[11] Plaintiff does not provide any rebuttal to Defendant's argument, nor was it addressed in Plaintiff's Motion. Thus, this Court agrees with Defendant and holds that no legal cause can be shown.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment on the basis of negligence under Louisiana law is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**, as it pertains to a finding that any breach on the part of MSC was not the legal cause of Plaintiff's damages.

**VII. CONCLUSION**

As stated above, it is clear that Plaintiff cannot succeed on a negligence *per se* claim through application of the OSHA

---

[11] Defendant provides five other reasons Defendant's breach should not be found the legal cause of Plaintiff's injury. (Rec. Doc. 49 at 21-22).

Regulation, and that violation of the OSHA Regulation cannot serve as evidence of negligence, as it was not actually violated. Additionally, Plaintiff has not proven that Defendant MSC is negligent under Louisiana law, but rather, Defendant has proven the converse. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED.**

New Orleans, Louisiana, this 23rd day of September, 2015.

_____
UNITED STATES DISTRICT JUDGE